**LOKER LAW, APC**
Matthew M. Loker, Esq. (279939)
matt.loker@loker.law
Nicholas J. Enns, Esq. (356855)
nick.enns@loker.law
132 Bridge Street
Arroyo Grande, CA 93420
Telephone: (805) 994-0177

*Attorneys for Plaintiff,*
Pamela Johnson

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PAMELA JOHNSON,**<br><br>Plaintiff,<br><br>**v.**<br><br>**THE HUNTINGTON NATIONAL BANK; and, BLOCK, INC. d/b/a CASH APP,**<br><br>Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>**I. ELECTRONIC FUNDS TRANSFER ACT, 15 U.S.C. § 1693, ET SEQ.; AND,**<br><br>**II. CALIFORNIA'S ELDER ABUSE AND DEPENDENT ADULT CIVIL PROTECTION ACT, WELF. & INST. CODE § 15600, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

## INTRODUCTION

1. The stated purpose of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). EFTA's "primary objection…is the provision of individual consumer rights." *Id*. Moreover, the language of EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability. *Id*., at 1693d-1.
2. Understanding that the elderly community is a highly vulnerable class, in 1982 the California Legislature enacted the Elder and Dependent Adult Civil Protection Act ("EDACPA") set forth in Welfare & Institutions Code §§ 15600, et seq. As such elderly individuals have heightened rights and special statutory protections not afforded to other members of the general public. In 2008, the California Legislature made a material change to the EDACPA, which broadened the statute dramatically so that any person that "knew or should have known that [its] conduct is likely to be harmful to the elder" could be held civilly liable under the EDACPA. *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 736-37, 112 Cal. Rptr. 3d 439, 447 (2010).
3. PAMELA JOHNSON ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of THE HUNTINGTON NATIONAL BANK ("Huntington") and BLOCK, INC. d/b/a CASH APP ("Block") (collectively, "Defendants") with regard to unauthorized electronic funds transfers.
4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.
5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Block took place in California, and all the conduct engaged in by Huntington took place in Ohio.

7. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant named.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court arises pursuant to federal question jurisdiction under 28 U.S.C. § 1331. More particularly, this action arises out of Defendants' violations of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. ("EFTA"). Additionally, jurisdiction of this Court for supplemental state claims arises pursuant to 28 U.S.C. § 1367, because the state law claim is so related to the EFTA claims that it forms part of the same case or controversy.

10. This Court has personal jurisdiction over Block because Block is headquartered in Oakland, California, and conducts business within the State of California.

11. This Court has personal jurisdiction over Huntington because Huntington conducts business within the State of California, and because the claims against Huntington arise out of the same remote-access fraud, the same July 8, 2026 telephone call, and the same series of unauthorized transfers as the claims against Block, including a $6,989.00 Cash App transfer funded from Plaintiff's Huntington checking account that Block processed in California and a $2,500.00 Zelle payment sent to a recipient enrolled under a telephone number with a California area code.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) for the following reasons: (i) Block resides in this judicial district; (ii) a substantial part of the events giving rise to Plaintiff's claims, including Block's receipt, investigation, and denial of Plaintiff's dispute, occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.
13. Pursuant to Civil Local Rule 3-2(c) and (d), assignment to the San Francisco Division or the Oakland Division is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in the County of Alameda, where Block is headquartered.

**PARTIES**

14. Plaintiff is a 77-year-old natural person who resides in the City of Toledo, County of Lucas, State of Ohio, and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).
15. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. 1693a(6).
16. Huntington is a national banking association headquartered in Columbus, Ohio, that operates branches throughout the State of Ohio, including in Toledo, Ohio.
17. Huntington is a "financial institution" as defined by 15 U.S.C. 1693a(9).
18. Huntington is a national banking association doing business in the County of Lucas, State of Ohio, and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).
19. Block is a Delaware corporation headquartered in Oakland, California, that operates the Cash App peer-to-peer payment platform and holds consumer funds in Cash App accounts.
20. Block is a "financial institution" as defined by 15 U.S.C. 1693a(9).
21. Block is a corporation doing business in the County of Alameda, State of California, and is a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

## FACTUAL ALLEGATIONS

### Plaintiff's Accounts

22. At all times relevant, Plaintiff was an individual residing in Toledo, Ohio. Plaintiff is 77 years old.

23. Plaintiff maintained a Huntington 50 Plus Checking account ending in 0300 with Huntington that constitutes an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. 1005.2(b)(1). Plaintiff also maintained a savings account and a personal line of credit ending in 2090 with Huntington. Plaintiff used the checking account for personal, family, and household purposes, including to receive her Social Security and retirement deposits and to pay household bills.

24. Prior to July 8, 2026, Plaintiff had never enrolled in or used Zelle through Huntington. Plaintiff's Zelle profile, which was tied to her mobile telephone number, was enrolled with a different financial institution, Old National Bank.

25. Plaintiff also maintained a Cash App account with Block, including a stored Cash App balance, that constitutes an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. 1005.2(b). Plaintiff opened and used the account for personal, family, and household purposes.

26. Prior to July 8, 2026, Plaintiff used her Cash App account sparingly and only for small, routine payments to people she knew, such as periodic $30.00 payments to her lawn-care provider. Plaintiff had never used Block's "Cash Out" feature to send funds to a Mastercard debit card ending in 2368, and Plaintiff has never owned or held any such card.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

### The July 8, 2026 Remote-Access Fraud

27. On July 8, 2026, Plaintiff attempted to update her payment information through the PayPal application on her iPhone. After receiving a notice within the application, Plaintiff called what she believed to be PayPal's customer service number. Plaintiff's telephone records reflect an incoming call from that number at 4:11 p.m., which Plaintiff did not answer, followed by an outgoing call from Plaintiff to that number at 4:13 p.m. that lasted two hours and three minutes. The number was saved in Plaintiff's phone under the contact name "Paypal Imc." The individuals who answered falsely represented that they were PayPal representatives, told Plaintiff that large sums of money in gift cards, Cash App transfers, and Bitcoin were being identified under her name, and directed Plaintiff to click a link that would give them "remote access" to her phone so that they could assist her.

28. Plaintiff, believing she was speaking with PayPal, clicked the link. Unbeknownst to Plaintiff, the link gave the fraudsters remote control over her phone and the financial applications on it, including Huntington's mobile banking application and her Cash App account. Plaintiff could not see what the fraudsters were doing within her applications.

29. Each of the transactions described below occurred while Plaintiff was on the telephone with the fraudsters and while they held remote control of her phone.

30. Using that fraudulently obtained access, on July 8, 2026 at approximately 4:29 p.m., the fraudsters transferred $9,899.00 from Plaintiff's line of credit into her Huntington checking account ending in 0300. Plaintiff's line of credit had not previously been displayed within Huntington's mobile banking application; it appeared only after the fraudsters asked Plaintiff about it during the remote-access session. Plaintiff did not request or authorize the draw.

31. At approximately 5:19 p.m. that same day, the fraudsters transferred Plaintiff's Zelle enrollment from Old National Bank to Huntington and enrolled Plaintiff's checking account in Zelle through Huntington's mobile banking application. Plaintiff did not request or authorize either action.

32. At approximately 5:39 p.m. that same day, a $2,500.00 Zelle payment (Payment ID H50Psdfe614H) was sent from Plaintiff's Huntington checking account to a recipient enrolled as "Stephanie Graham" at telephone number (707) 850-7993. Plaintiff does not know Stephanie Graham, has never transacted with her, and did not initiate or authorize the payment.

33. Huntington's own system flagged the payment. Huntington's Zelle interface displayed a notice that the $2,500.00 payment was "pending," that "[y]our payment is being reviewed," and that "[t]he money has been withdrawn from your account, but hasn't been sent yet." Notwithstanding that review, Huntington released the $2,500.00 payment approximately twenty minutes after the Zelle enrollment was created.

34. While the fraudsters controlled Plaintiff's phone, they also instructed Plaintiff to send $6,989.00 through Cash App to a person she trusted. Plaintiff sent the funds to her daughter-in-law, Nicole Nieves, and asked Ms. Nieves in the payment note to return the money. Ms. Nieves telephoned Plaintiff to ask why the money had been sent, told Plaintiff that she believed something was wrong, and immediately returned the full $6,989.00 to Plaintiff's Cash App balance.

35. Upon information and belief, the fraudsters directed the round-trip transfer to Ms. Nieves so that they could observe Plaintiff entering her Cash App PIN and thereby capture it. Plaintiff saw no evidence during the call that any payment was being made to the person the fraudsters claimed to be assisting.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

36. Plaintiff's two-hour call with the fraudsters ended at approximately 6:16 p.m. The fraudsters called Plaintiff back at 6:17 p.m. and kept her on the telephone for another nineteen minutes. During that second call, on July 8, 2026 at approximately 6:23 p.m. EDT, the fraudsters used their remote access to initiate a "Cash Out" instant transfer of $6,989.00 from Plaintiff's Cash App balance to a Mastercard debit card ending in 2368 that does not belong to Plaintiff, and caused Plaintiff's account to be charged a $75.00 instant transfer fee. The $6,989.00 Cash App transfer was funded from Plaintiff's Huntington checking account ending in 0300 and was completed during that second call.

37. Plaintiff did not initiate, authorize, or receive any benefit from the $6,989.00 Cash Out to the Mastercard debit card ending in 2368 or the $75.00 fee. Plaintiff had enabled Block's PIN requirement on her Cash App account before July 8, 2026, understood that requirement to be a security measure Block applied to transactions, and never provided her PIN to anyone. Upon information and belief, the fraudsters captured or bypassed the PIN through their remote access to Plaintiff's phone. The Cash Out carried no associated Cash App name or identifier and no note describing its purpose.

38. Although Plaintiff had transaction notifications enabled on her accounts, Plaintiff received no notification, alert, or scam warning from Block regarding the Cash Out.

39. Plaintiff's telephone records confirm that the $9,899.00 line-of-credit draw, the Zelle enrollment, and the $2,500.00 Zelle payment all occurred during the single two-hour telephone call in which the fraudsters held remote control of Plaintiff's phone, and that the Cash Out was initiated within minutes of the fraudsters calling her back at the end of that call.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

40. Under Regulation E, a transfer initiated by a person who obtained the consumer's access device through fraud is an unauthorized electronic fund transfer. 12 C.F.R. pt. 1005, Supp. I, cmt. 2(m)-3. The fact that the transfers were sent through Plaintiff's mobile banking and Cash App credentials by fraudsters who obtained control of her phone through deception does not make the transfers authorized.

41. The abovementioned transactions were unauthorized electronic fund transfers as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

**Plaintiff's Disputes**

42. Plaintiff first learned of the Zelle payment and the Cash Out on July 9, 2026, when Huntington placed a hold on her checking account and Plaintiff went to her local branch to investigate.

43. Plaintiff promptly reported the fraud to Huntington immediately upon discovering the unauthorized Zelle payment, on July 9, 2026, and disputed the transaction. Plaintiff's telephone records reflect calls from Plaintiff to Huntington's customer service line at 11:05 a.m., lasting nineteen minutes, and at 11:27 a.m., lasting one hour and forty-three minutes. Huntington opened a dispute under Reference No. 27203547 and, in its own written recap of Plaintiff's dispute dated July 9, 2026, recorded that Plaintiff did not participate in the transaction, that the fraudsters used a remote-session application on her phone, and that Plaintiff had not provided her username, password, or security code to anyone.

44. The fraudsters continued to call Plaintiff's phone on July 9, 2026, including at 11:39 a.m., 11:43 a.m., and 11:44 a.m., while Plaintiff was on the telephone with Huntington reporting the fraud.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

45. Plaintiff likewise promptly reported the fraud to Block immediately upon discovering the unauthorized Cash Out, on or about July 9, 2026, and disputed the transaction through Cash App Support.

46. Block acknowledged the dispute by email, confirming that it had received Plaintiff's "disputes about unauthorized transactions from your compromised account" and assigning Claim No. 261318336. In that same email, Block instructed Plaintiff that any evidence supporting her claim had to be submitted by July 10, 2026 at 10:35 p.m. EDT, affording Plaintiff approximately one day to gather and produce documentation of the fraud.

47. During Block's in-application support chat, Block's representative told Plaintiff that the $6,989.00 Cash Out had been cancelled and had not gone through Cash App. Plaintiff relied on that representation. Plaintiff subsequently learned from Block's own email that the transfer had in fact been completed and that Block was holding her responsible for it.

48. On July 10, 2026, Plaintiff met in person with Huntington's representatives at its Toledo branch, closed the compromised accounts, and opened new accounts. That same day, Plaintiff reported the fraud to the Toledo Police Department (Report No. 026522-26), which assigned Detective Shaun Conklin to investigate. Plaintiff also reported the incident to the Federal Trade Commission, the Ohio Attorney General, and IdentityTheft.gov, and provided Block's records to Detective Conklin.

49. Because Plaintiff notified each Defendant within two business days of learning of the unauthorized transfers, Plaintiff's liability, if any, is limited to $50.00 under 15 U.S.C. § 1693g(a) and 12 C.F.R. 1005.6(b)(1).

50. Despite Plaintiff's prompt disputes and provision of all information necessary to investigate the unauthorized transactions, neither Huntington nor Block issued a provisional credit to Plaintiff's account within ten business days as required by 15 U.S.C. § 1693f(c) and 12 C.F.R. 1005.11(c)(2)(i).

51. Plaintiff submitted her disputes to Defendants in less than 60 days from receipt of account statements showing the unauthorized transactions.

**Huntington's Investigation**

52. By letter dated July 22, 2026, Huntington denied Plaintiff's dispute, stating only that "[a]fter research, we have determined that this is a valid transaction." Huntington offered no explanation of what it reviewed or why it concluded the payment was valid.

53. By letter dated August 23, 2026, Plaintiff asked Huntington to review its determination, again explained that she had never held a Zelle account with Huntington, that the Zelle account was opened and the payment sent during the fraudsters' remote-access session, and that she had disputed the payment as soon as she learned of it. Huntington never responded to that letter and has not reversed its determination.

54. Huntington failed to review and consider that the Zelle enrollment through Huntington was created only twenty minutes before the payment, that the payment was the first Zelle payment ever sent from Plaintiff's account, and that it went to a recipient with whom Plaintiff had no prior history.

55. Huntington failed to review and consider that the payment was funded by a same-day $9,899.00 draw on Plaintiff's line of credit, an event with no precedent in Plaintiff's account history, and that the same session produced a $6,989.00 Cash App payment from the same account.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

56. Huntington failed to review and consider that its own system had flagged the payment for review before releasing it, and that Huntington itself placed a fraud hold on Plaintiff's account the following day.

57. Huntington failed to review and consider its own July 9, 2026 dispute recap, which recorded that Plaintiff did not participate in the transaction and that a remote-session application had been used on her phone.

58. Huntington failed to issue, or even offer, any provisional credit to Plaintiff at any point during or after its investigation.

59. Huntington failed to review and consider that Plaintiff, a 77-year-old customer of Huntington since 1997, had never used Zelle through Huntington and had no pattern of sending large person-to-person payments.

60. Huntington's investigation was unreasonable.

61. More specifically, Huntington should have discovered from its own records, including Plaintiff's investigative materials, that the transactions at issue were unauthorized and fraudulent transactions.

62. Huntington did not have a reasonable basis for believing that Plaintiff's account was not in error.

63. Huntington knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Huntington at the time of its investigation.

64. Through this conduct, Huntington violated 15 U.S.C. § 1693f.

65. Through this conduct, Huntington violated 15 U.S.C. § 1693g.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

**Block's Investigation**

66. Between July 2026 and August 2026, Plaintiff submitted repeated written dispute narratives to Block through Block's in-application "Describe your issue" support channel, in which Plaintiff identified the claim number, stated that the transaction was not initiated by her, explained the remote-access scheme, identified the investigating detective and police report number, and asked Block to identify the holder of the Mastercard debit card ending in 2368, the associated Cash App name and account information, the source of the $75.00 instant transfer fee, and the location from which the transfer was initiated. Block answered none of those questions.

67. On July 25, 2026, Block denied Plaintiff's dispute (Claim No. 261318336), asserting only that the transaction was "authorized by you, or someone you authorized to use your credentials." Block offered no other explanation.

68. Plaintiff then requested the documents on which Block relied, as 15 U.S.C. § 1693f(d) and 12 C.F.R. 1005.11(d)(1) entitle her to do. Plaintiff made that request at least four times between July 25, 2026 and August 23, 2026, including by letter to Block dated August 23, 2026, in which Plaintiff again explained that fraudsters had obtained remote access to her phone and that she had never authorized the Cash Out.

69. Not until August 31, 2026 did Block respond. Block's "documentation" consisted of a single-row table repeating the date, amount, target card, and the words "Manual Cash Out." Block provided no device, location, IP address, login, or other investigative information, and stated that it was "unable to provide any additional support regarding this claim and no further action will be taken."

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

70. Block failed to review and consider that a $6,989.00 instant Cash Out to a third-party debit card was wholly inconsistent with Plaintiff's established account history of small peer-to-peer payments to people she knew.

71. Block failed to review and consider that the Cash Out was made to a card that does not belong to Plaintiff and that Plaintiff had never before used with her account.

72. Block failed to review and consider that the Cash Out occurred within minutes of an inbound transfer of the identical amount, a rapid pass-through pattern that is a hallmark of account-takeover fraud.

73. Block failed to review and consider that a consumer moving her own money has no reason to pay a $75.00 fee to move it instantly to a card she does not own.

74. Block failed to review and consider Plaintiff's immediate and unequivocal report that fraudsters had obtained remote access to her phone, her police report, and the fact that the transaction was reported the day after it occurred.

75. Block afforded Plaintiff approximately one day to submit evidence in support of her claim, and then denied the claim without identifying the device, location, IP address, or account holder associated with the Cash Out. Block's process was not a reasonable investigation.

76. Block's stated basis for denial, that the transaction was made with Plaintiff's "credentials," is not a reasonable basis. The use of Plaintiff's credentials by fraudsters who obtained them by deception does not make the transfer authorized. 12 C.F.R. pt. 1005, Supp. I, cmt. 2(m)-3.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

77. Block's own communications to Cash App customers state that, "[w]hen we suspect an account is suspicious, we'll show you a scam warning before you send any money." Block displayed no such warning and applied no such scrutiny to a $6,989.00 instant transfer to an unfamiliar external card from the account of a 77-year-old customer with no history of such activity.

78. Block's investigation was unreasonable.

79. More specifically, Block should have discovered from its own records, including Plaintiff's investigative materials, that the transactions at issue were unauthorized and fraudulent transactions.

80. Block did not have a reasonable basis for believing that Plaintiff's account was not in error.

81. Block knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Block at the time of its investigation.

82. Through this conduct, Block violated 15 U.S.C. § 1693f.

83. Through this conduct, Block violated 15 U.S.C. § 1693g.

84. Block was on notice, from the moment it received Plaintiff's dispute, that Plaintiff's funds had been taken from her account without her authorization. Block's own acknowledgment described the dispute as concerning "unauthorized transactions from your compromised account," Block's own representative told Plaintiff that the $6,989.00 Cash Out had been cancelled, and Plaintiff supplied Block with the police report number and the name of the investigating detective.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

85. After Plaintiff's funds were taken, Block refused to return or credit the stolen amounts, notwithstanding its statutory obligation to do so under the Electronic Funds Transfer Act. Block's refusal to reimburse Plaintiff was deliberate and ongoing, even after Plaintiff disputed the transaction, cooperated with the investigation, provided additional information confirming that the transfer was unauthorized, and repeatedly asked Block to identify the recipient of her money. Block also charged and retained a $75.00 instant transfer fee on the very transfer Plaintiff did not authorize.

86. By refusing to refund the stolen funds and retaining the fee it charged on the unauthorized transfer, Block wrongfully obtained and retained Plaintiff's personal property. Block knew or should have known that retaining fraudulently taken funds belonging to a 77-year-old consumer living on a fixed income was likely to cause substantial financial harm, emotional distress, and insecurity. Block's conduct deprived Plaintiff of money to which she had a clear legal and statutory right and exposed her to precisely the type of harm the Elder and Dependent Adult Civil Protection Act was enacted to prevent.

87. Block's conduct constituted more than a mere failure to reimburse; it amounted to the taking, obtaining, and retention of an elder's property for a wrongful use. Block acted with knowledge that its conduct was likely to be harmful and in conscious disregard of Plaintiff's rights and statutory protections as an elder. Through this course of conduct, Block committed financial elder abuse in violation of Welfare & Institutions Code § 15610.30.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

**Plaintiff's Damages**

88. Defendants' conduct left Plaintiff with $9,564.00 in unauthorized transfers and fees that she was wrongfully held responsible for: the $2,500.00 Zelle payment that Huntington refuses to reverse, and the $6,989.00 Cash Out and $75.00 instant transfer fee, totaling $7,064.00, that Block refuses to refund. Because the funds originated from Plaintiff's Huntington line of credit, Plaintiff has been charged interest on the stolen money.

89. The situation has caused Plaintiff significant emotional distress, anxiety, and frustration. Plaintiff was forced to close her accounts with Huntington and open new ones, redirect her Social Security and retirement deposits, close and replace three credit cards, freeze her credit with all three credit reporting agencies, and repay the stolen funds to her line of credit with interest. Plaintiff, who lives on a fixed income, has been charged $80.95 in interest on the line of credit ending in 2090 in connection with the balance created by the fraud, and on September 4, 2026, Huntington assessed Plaintiff a $30.00 late fee on that balance, which Plaintiff disputed after visiting Huntington's branch to arrange payment. Plaintiff paid $500.00 toward the balance on September 9, 2026. On September 14, 2026, Huntington transferred the remaining $9,509.95 balance to a new line of credit account number, on which Plaintiff remains obligated.

90. To date, Defendants continue to hold Plaintiff responsible for the fraudulent transactions.

91. Since Plaintiff's efforts to be absolved of the unauthorized fraudulent transactions were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's disputes.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

## CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT

## 15 U.S.C. §§ 1693, ET SEQ. (EFTA)

## (AGAINST BLOCK AND HUNTINGTON)

92. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

93. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of EFTA.

94. As a result of each and every violation of EFTA, Plaintiff is entitled to any actual damages, inclusive of emotional damages, pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## COUNT II

## ELDER AND DEPENDENT ADULT CIVIL PROTECTION ACT

## WELFARE & INSTITUTIONS CODE §§ 15600, ET SEQ.

## (AGAINST BLOCK)

95. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

96. Plaintiff is the age of 65 or older, and thus an "elder" within the meaning of Welfare & Institutions Code § 15610.27.

97. Under Welfare & Institutions Code § 15610.30(a), financial abuse of an elder occurs when an entity either directly or assists in the taking, secreting, appropriating, obtaining, or retaining of the real or personal property of an elder or dependent adult for a wrongful use.

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420

98. Welfare & Institutions Code § 15610.30(b) clarifies that a wrongful use is broadly defined to include whenever an entity knew or should have known that its conduct is likely to be harmful to the elder.

99. Welfare & Institutions Code § 15610.30(c) clarifies that a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right.

100. Here, as described above, Plaintiff was entitled to a refund of the stolen funds under EFTA. However, Block refused to reimburse Plaintiff in the amount of the stolen funds, which she had a legal right to receive.

101. By refusing to reimburse her for the $6,989.00 Cash Out and the $75.00 fee charged on it, a total of $7,064.00, Block directly violated Welfare & Institutions Code § 15610.30(a)(1) by retaining funds of an elder that it knew or should have known would cause the elder harm.

102. Block's conduct was the proximate and foreseeable cause of substantial harm to Plaintiff, and Plaintiff has suffered, and continues to suffer and incur special and general damages.

103. Based on the above, Plaintiff alleges that Block is guilty of recklessness, oppression, fraud, or malice through its actions.

104. Block's conduct was a substantial factor in causing the foregoing harm which Plaintiff has suffered and continues to suffer.

105. Further, as a direct and proximate result of Block's misconduct, and Block's failure to refund or credit the lost funds, Plaintiff has incurred and will continue to incur attorneys' fees and litigation expenses in an amount to be proven at trial. Plaintiff therefore seeks to recover any and all remedies permitted by the Civil Code and Welfare & Institutions Code, including attorneys' fees and expenses pursuant to Welfare & Institutions Code § 15657.5.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendants for:

- An award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) against each Defendant for Plaintiff;
- An award of treble damages pursuant to 15 U.S.C. § 1693f(e) against each Defendant;
- An award of statutory damages of no less than $100 nor greater than $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A) against each Defendant for Plaintiff;
- An award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3) against each Defendant;
- As against Block, actual damages, reasonable attorneys' fees and costs, and punitive damages under Welfare & Institutions Code § 15657.5;
- As against Block, treble damages under Cal. Civ. Code § 3345;
- As against Block, punitive damages under Cal. Civ. Code § 3294;
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

106. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: October 2, 2026

Respectfully submitted,

**LOKER LAW, APC**

By: ___/s/ Nicholas J. Enns____
Nicholas J. Enns, Esq.
ATTORNEY FOR PLAINTIFF

LOKER LAW, APC
132 BRIDGE STREET
ARROYO GRANDE, CA 93420